# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:22-cr-231 |
| vs. | : | JUDGE GRAHAM |
| PAUL C. WELCH, | : | |
| Defendant. | : | |

## SENTENCING MEMORANDUM OF PAUL WELCH

Defendant Paul Welch, through undersigned counsel, respectfully submits the following Sentencing Memorandum for the Court's consideration pursuant to 18 U.S.C. § 3553.

Respectfully submitted,
**Taft Stettinius & Hollister LLP**

**/s/ David H. Thomas**
DAVID H. THOMAS
Ohio Supreme Court No. 0071492
P: (614) 334-6199
dthomas@taftlaw.com

**/s/ Kathryn S. Wallrabenstein**
KATHRYN S. WALLRABENSTEIN
Ohio Supreme Court No. 0092172
41 South High Street, Suite 1800
Columbus, Ohio 43215
P: (614) 220-0238
F: (614) 221-2007
kwallrabenstein@taftlaw.com

Counsel for Defendant

**MEMORANDUM**

**FACTUAL AND PROCEDURAL BACKGROUND:**

Paul Welch is a devoted son and brother who has repeatedly demonstrated the lengths to which he will go for the care and support of his family members. The Welch family has endured more than their fair share of hardships and medical calamities over the years. Still, the family, and Paul specifically, have found a way to channel these hardships, struggles with addiction, and other medical calamities into causes for the greater good and motivation to better their lives. Unfortunately, Paul's struggles with addiction ultimately led to the offense conduct bringing him before his Court; however, he has already clearly demonstrated his commitment to living a law-abiding and productive life in the four years since his voluntary withdrawal from illegal activity.

Mr. Welch pled guilty to a one count Information charging him with conspiracy to possess with intent to distribute psychedelic mushroom analogue, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 813, 841(a)(1) and (b)(1)(C), and 846 on January 11, 2023. The Probation Department has submitted a final Presentence Investigation Report ("PSI") in this matter that calculates a guideline range of thirty to thirty-seven months based on a total offense level of 19 and a criminal history category of I. The guideline range calculated by the Probation Department is based on a Converted Drug Weight of 106.122 kilograms; however, the parties agreed that Mr. Welch is accountable for 95 kilograms of Converted Drug Weight. The parties' calculation results in a total offense level of 17 and a guideline range of twenty-four to thirty months. There are no other pending objections to the PSI aside from the discrepancy related to the Converted Drug Weight.

**REASONS IN SUPPORT OF A DEVIATION FROM A GUIDELINE SENTENCE:**

Mr. Welch respectfully submits that a term of imprisonment is not necessary to satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). A probationary sentence would be consistent with the factors set forth in section 3553 and, in consideration of the advisory Sentencing Guidelines, would be reasonable based upon the particular facts and circumstances in this case. Section 3553 provides that the sentence shall be "not greater than necessary to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a). The defense submits a sentence of a term of probation would be sufficient based on the factors set forth in section 3553 and the underlying facts and circumstances.

***The nature and circumstances of the offense and the history and characteristics of Paul Welch do not require a term of imprisonment.***
**18 U.S.C. § 3553(a)(1)**

A reasonable sentence considers the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to § 3553(a)(1). Undersigned counsel respectfully submit that both the nature and circumstances of the offense and the history and characteristics of Mr. Welch justify a more lenient sentence of probation rather than imprisonment.

Paul Welch's childhood was replete with tragedy and setbacks. Paul has two older sisters and one younger sister. His eldest sister, Brynn, was born with severe developmental disabilities, blindness, and cerebral palsy. Paul's father, John, abused alcohol and stimulants throughout Paul's childhood. John was also physically abusive. Paul's mother, Mary, struggled with severe depression throughout his childhood. When Paul was five, Mary began to seclude herself in a room. This lasted for approximately one year, leaving Paul and his siblings without a mother figure. Further, his mother's self-isolation left Paul more vulnerable to his father's abuse. Paul's parents eventually divorced and his father relocated to California. This created additional

3

hardships on the family, as Paul's mother and sisters struggled to provide for themselves without the financial assistance of Paul's father. They often went without adequate food as a result. As an adult, Paul has worked to repair his relationship with his father, and he also understands that his mother's depression was the reason for her absence from his life for a period during his childhood. However, as a child, these experiences were very difficult for Paul to navigate.

Throughout adolescence and into adulthood, Paul watched his family struggle with significant medical conditions. His eldest sister has resided in a permanent care facility since her birth due to the severity of her developmental disabilities and medical conditions. Paul's mother was first diagnosed with breast cancer when Paul was fifteen years old. Mary's cancer recurred recently and she underwent surgery to remove cancerous tissue in November of 2022. Mary continues to receive immunotherapy. Paul was his mother's sole financial provider during this recent cancer treatment and recovery from surgery. He also temporarily relocated from Colorado to Georgia to provide his mother with post-operative care before returning to his residence in Denver.

Paul's second oldest sister, Molly, is one year older than Paul and sustained life altering injuries from a car accident when they were both young adults. On February 9, 2008, Molly was in a head-on collision that resulted in a traumatic brain injury. She was in a coma for weeks and then was only minimally conscious for months. Today, she has no use of her right arm and minimal use of her right leg. Molly has worked hard to pave a path forward after her accident: she is now a motivational speaker and has started a nonprofit to campaign against distracted driving.[1]

---

1 The website for Molly's non-profit is: https://www.asecondlater.com/.

Paul was a freshman in college at the time of Molly's accident and was working two jobs to pay for his tuition. He injured his back from the physical labor required by these jobs and required surgery on his spine. He was prescribed Oxycodone, developed an opiate addiction, and began using heroin. The spinal injury and subsequent opiate addiction ultimately led to Paul's involvement in the offense conduct that brings him before this Court.

Paul struggled with opiate addiction for four years after his spinal surgery. He overdosed twice during this time. Eventually, Paul graduated college and was able to break his opiate addiction in 2012, in part by using psilocybin mushrooms as a less deadly way to self-medicate. Paul has always worked in the IT field, so his background coupled with his own use of psilocybin mushrooms led him to the dark web. Paul acted as a "re-shipper" of liquid mushroom analogues for the Barlow organization from approximately June 2017 to June 2019. As a re-shipper, Paul would send liquid psychedelic mushroom analogues to customers in packages via the mail. Paul also had lawful employment throughout the period of time he participated in the instant offense conduct, but Paul was motivated to obtain additional income so that he could help his mom and two disabled sisters. Paul stopped participating in these illegal acts in June of 2019, prior to the initiation of any law enforcement investigation.

After deciding on his own to cease involvement in illegal activities, Paul focused on moving forward with his IT career. His life then took an abrupt turn in November 2021 when he was arrested in this case. Paul was gainfully employed and held the position of senior IT analyst at the time of his arrest. Currently, Paul is working three jobs. He remains steadfast in his desire to use gainful employment as a means to support his family.

Paul has channeled his challenging childhood and struggles in his early adulthood to develop into an empathetic adult who treasures his family members, regardless of their past

transgressions and struggles. Attached as Exhibits A and B[2] are letters in support of Paul from his parents. Both letters emphasize how dedicated Paul is to helping his family. Paul is devastated that his actions have negatively impacted his family and he is trying his best to reduce the impact his conduct and this case have on them.

In addition, attached as Exhibit C is a letter in support from Rhonda Curtis. Ms. Curtis works with Paul and they also have overlapping volunteer work in the community. Ms. Curtis outlines the high standards to which Paul holds his work, both at his paid position as well as in a volunteer capacity.

While these factors do not excuse Paul's criminal acts, they do shed light on the environmental factors that contributed to his behavior. He did not commit these crimes out of malice, nor did he use any violence. Moreover, he withdraw from the conspiracy on his own and before any law enforcement intervention. His actions were motivated by his drive to provide a better life for his family. Undersigned counsel respectfully submit that the nature and circumstances of the offense and the history and characteristics of Paul Welch justify the imposition of a probationary sentence.

### *Paul Welch understands the seriousness of his offense.*
### 18 U.S.C. § 3553(a)(2)(A) and § 3553(a)(2)(B)

The Court's sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense according to § 3553(a)(2)(A). This sentence should also adequately deter criminal conduct under § 3553(a)(2)(B). Paul Welch appreciates the seriousness of his offense and he has expressed genuine remorse for his actions. He has been able to reflect on his actions and has accepted full responsibility for them. This is best reflected in his

---

2 The letters in support have been redacted in accordance with Fed. Crim.R. 49.1.

disclosure of his illegal conduct to his family members, who find his behavior to be out of character. Paul is well aware of the consequences of his offense and how his conduct has negatively impacted his family, friends, and community. Paul regrets engaging in behavior that jeopardized his ability to be present and support the individuals who have come to rely on him. While Paul's behavior in this case has negatively affected the individuals closest to him, their willingness to continue to support him will be a motivating factor for Paul moving forward with a law-abiding and productive lifestyle.

Finally, Paul, who turned thirty-five earlier this month, comes before this Court with no prior criminal convictions. Further, Paul ceased his involvement in criminal activity prior to law enforcement involvement, which demonstrates his sincere and independent decision to move forward with a law-abiding life. He is also aware of the countless collateral consequences he will be impacted by moving forward due to having a felony conviction. Therefore, a custodial punishment is not necessary to deter Paul from criminal conduct or to provide just punishment.

***A term of imprisonment is not necessary to protect the public,
as there is a low risk of recidivism by Paul Welch.***
**18 U.S.C. § 3553(a)(2)(C)**

A reasonable sentence should protect the public from further crimes of the defendant pursuant to § 3553(a)(2)(C). Paul Welch presents a lesser risk of committing crimes in the future. Paul is less likely to reoffend because he has readily and clearly accepted responsibility for his actions and shown remorse through his conduct in this case. Paul's cooperation with the Court and acceptance of responsibility provide additional evidence of his remorse and commitment to living a law-abiding life in the future. Coupled with his independent decision to withdraw from the conspiracy prior to law enforcement involvement, this demonstrates that a custodial punishment is not necessary to deter Paul from criminal conduct or to protect the public. Indeed,

Paul has led a law-abiding and productive life in the four years since he voluntarily withdrew from the conspiracy.

The United States Sentencing Commission overview of recidivism among federal drug trafficking offenders published in January of 2022 supports a finding that Paul Welch is less likely to reoffend due to his lack of any prior criminal history.  Paul has no prior criminal convictions and zero criminal history points.  Criminal history has been found to have a strong correlation with rearrest rates, specifically for federal drug trafficking offenders.  The rearrest rate for federal drug trafficking offenders with zero criminal history points is 29.9%, while the rearrest rate for offenders in the highest criminal history category is 74.9%.  United States Sentencing Commission, *Recidivism of Federal Drug Trafficking Offenders Released in 2010*, 30.[3]

### *A custodial sentence is not necessary to provide Paul Welch with needed educational or vocational training, medical care, or other correctional treatment.*
### 18 U.S.C. § 3553(a)(2)(D)

The Court's sentence should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner according to § 3553(a)(2)(D).  Paul Welch is intelligent and has repeatedly demonstrated his strong work ethic. Paul worked two jobs while in college in order to pay tuition and has since used his degree to develop a flourishing IT career.

Paul has also overcome opiate addiction.  Even years removed from his addiction, Paul remains vigilant in his daily efforts to avoid any relapse.  He is also keenly aware of his family's history with addiction, and is proud of his father for maintaining his sobriety for over a decade as well.

---

3 Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220112_Recidivism-Drugs.pdf.

8

Paul has previously been diagnosed with attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and major depressive disorder. He continues to take all necessary steps to manage his mental health conditions. Paul re-engaged in mental health treatment services approximately eighteen months ago and continues to do well in counseling. He has also found exercise, prayer, and maintaining a consistent routine to be helpful for his mental well-being.

Therefore, a probationary sentence would be sufficient to ensure Paul Welch continues to receive treatment as necessary.

### *A probationary sentence is available and would be sufficient for this offense.*
### 18 U.S.C. § 3553(a)(3) and § 3553(a)(4)(A)

The Court's sentence should consider the kinds of sentences available and the sentencing range established for the applicable category of offense committed by the applicable category of defendant set forth in the guidelines under § 3553(a)(3) and § 3553(a)(4). In arriving at a sentence that is "sufficient, but not greater than necessary" to satisfy Congress' sentencing mandate, this Court is also asked to consider the kinds of sentences and the sentencing range called for by the advisory Guidelines and the applicable statutes. The applicable sentencing range based on the parties' calculations of the applicable advisory Guidelines is twenty-four to thirty months. As the offense is a Class C Felony, 18 U.S.C. § 3561(c)(1) establishes his eligibility for a probationary sentence of one to five years. Paul Welch respectfully submits that a probationary sentence is available and would be sufficient in this matter.

The Supreme Court of the United States has recognized that while less severe than imprisonment, imposition of a term of probation still subjects a defendant to serious consequences. In *Gall v. United States*, 552 U.S. 38, 48-49, 128 S. Ct. 586, 595-596 (2007), the Court noted:

9

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109.

In *Gall*, the defendant was facing a higher guideline range than Mr. Welch and instead of imposing the minimum guideline range of thirty months, the trial court sentenced the defendant to probation for his participation in a drug conspiracy. *Id.*, at 593-594.

Notably, there are significant similarities between both the offense conduct and offender characteristics relevant in *Gall* and this matter. The defendant in *Gall* stopped using the narcotics that he was also distributing to others as part of a conspiracy and voluntarily withdrew from the conspiracy. The defendant in *Gall* then began working in the construction industry as a carpenter. An indictment charging the defendant in *Gall* was returned approximately three and a half years after his voluntary withdrawal. While on pretrial release, the defendant in *Gall* continued to excel in his chosen career. Similarly, Paul Welch stopped using psychedelic mushrooms in 2018 and has not used any illicit substances since that time. He then stopped engaging in illegal activity in June of 2019 and instead only continued with his gainful employment in the IT field. Paul was then arrested on October 22, 2021 and has been on pretrial release since that time.

Undersigned counsel respectfully submit that a probationary sentence is available and would be sufficient in this matter.

*A probationary sentence would not create any unwarranted sentence disparities.*
**18 U.S.C. § 3553(a)(6)**

The Court's sentence should avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct according to § 3553(a)(6). A probationary sentence would not create any unwarranted sentence disparity between Mr. Welch and any of the defendants in related cases in this District, nor would it create an unwarranted disparity among defendants nationwide.

There are a number of related cases and defendants in this District. The Government has indicated that Brandon Tvedt's culpability for the offense conduct is similar to Mr. Welch's culpability. On October 7, 2022, this Court sentenced Mr. Tvedt to time served[4] followed by a period of supervised release of three years with the first six months to be spent on home confinement. United States of America v. Brandon W. Tvedt, Case No. 2:22-cr-041-1, Doc. 38, Judgment.

Similarly, another related case in this District, United States of America v. Michael C. Fort, Case No. 2:22-cr-22, resolved with a sentence of one day imprisonment followed by three years of supervised release. United States of America v. Michael C. Fort, Case No. 2:22-cr-22, Doc. 33, Judgment. Further, non-custodial sentences have been imposed for some of the defendants charged in the largest related Indictment filed in this District. For example, Amy Miller was sentenced to five years of probation with the first six months on home detention. United States of America v. Barlow et al, Case No. 2:21-cr-89-007, Doc. 140, Judgment. Similarly, Jennifer Campbell was sentenced to time served and five years of supervised release with the first six

---

[4] Mr. Tvedt was arrested on November 30, 2021 and subsequently released on December 2, 2021, resulting in a total of three days served. Case No. 2:22-cr-041-1, Doc. 3, PAGEID 36-37, Rule 5(c)(3) Documents.

11

months on home detention. United States of America v. Barlow et al, Case No. 2:21-cr-89, Doc. 119-004, Judgment. As such, a probationary sentence in this case would avoid any unwarranted sentencing disparity in the related cases in this District.

A below-guidelines sentence would also not create any sentence disparity based on the national sentence information available from the United States Sentencing Commission's Judiciary Sentencing Information ("JSIN"). United States Sentencing Commission, Judiciary Sentencing Information.[5] JSIN compiles cumulative data based on five years of sentencing information for offenders sentenced under the same primary guideline who also have the same Final Offense Level and are in the same Criminal History Category. During fiscal years 2017 to 2021, there were 94 defendants (1) whose primary guideline was § 2D1.1 with the primary drug type of Other, (2) with a Final Offense Level of 17, and (3) a Criminal History Category of I, after excluding offenders who received a § 5K1.1 substantial assistance departure. Of these, 19 defendants (or 20% of the defendants) received a sentence of probation or fine only. The remaining 75 defendants who had a sentence of imprisonment in whole or in part were sentenced to an average of 16 months, with a median sentence of 15 months. Notably, that means the average and median sentences imposed were 8 and 9 months less than the otherwise applicable low-end sentencing guideline of 24 months. Especially considering the unique and mitigating circumstances in this case, a probationary sentence is appropriate and would align Mr. Welch with 20% of the defendants who had the same criminal history category and final offense level for a similar offense in the last five fiscal years.

---

5 Available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

12

**CONCLUSION:**

This Court is respectfully requested to consider all of the foregoing information when formulating an appropriate disposition in Paul Welch's case. A custodial sentence is not required to satisfy the concerns expressed in section 3553, and imposition of a probationary sentence would not create a disparity between Mr. Welch and other similarly situated offenders. Rather, a period of probation would reflect the serious nature of the offense while also accounting for Mr. Welch's history and characteristics, his voluntary withdrawal from the offense conduct prior to law enforcement involvement, and his demonstrated efforts to provide financial and physical support for his family through his legitimate employment in the IT field. For the foregoing reasons, Mr. Welch respectfully submits that a sentence of probation is warranted pursuant to 18 U.S.C. § 3553.

Respectfully submitted,
**Taft Stettinius & Hollister LLP**

**/s/ David H. Thomas**
DAVID H. THOMAS
Ohio Supreme Court No. 0071492
P: (614) 334-6199
dthomas@taftlaw.com

**/s/ Kathryn S. Wallrabenstein**
KATHRYN S. WALLRABENSTEIN
Ohio Supreme Court No. 0092172
41 South High Street, Suite 1800
Columbus, Ohio 43215
P: (614) 220-0238
F: (614) 221-2007
kwallrabenstein@taftlaw.com

Counsel for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court for the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to Assistant U.S. Attorney Michael Hunter, 303 Marconi Boulevard, Suite 200, Columbus, Ohio 43215, on May 25, 2023, by electronic mail.

                                                     **/s/ David H. Thomas**
                                                     DAVID H. THOMAS